LAND, J.
Plaintiff sued out executory process on a mortgage for $3,000, executed by the defendant. The latter enjoined the execution on the ground of partial payments not credited on the mortgage note. Defendant subsequently dismissed tbe injunction suit, and filed a third opposition, claiming as a homestead $2,000 out of the proceeds of the sale of the property. The United Irrigation & Rice Milling Company also filed an intervention and third opposition, claiming $2,000 of the proceeds by virtue of a special mortgage executed by tbe defendant, in February, 1907, with a waiver of homestead rights by the husband and wife.
The mortgage from the defendant to the-plaintiff, was executed in December, 1902,. and contained no such waiver.
The mortgaged property was sold at sheriff’s sale for $4,20,0. It appears that after' the seizure the defendant transferred certain movables attached to tbe premises totbe intervener and third opponent.
There was judgment in favor of tbe United Irrigation & Rice Milling Company for $2,000, to be paid by preference out of tbe proceeds of tbe sale, less the pro rata of taxes and costs of sale, and less $445, the value of the said movables disposed of after the seizure of the rest of the homestead.
Plaintiff has appealed, and has filed in this court a motion to vacate the judicial sale-on several grounds. The intervener has prayed for an amendment of the judgment by rejecting the item of taxes, and by allowing an additional credit of $286.17 on the mortgage note and coupons sued on by the plaintiff.
On December 12, 1899, an agreement was made between George Cox and H. E. Heald, by which the former agreed to sell to the latter a certain tract of land containing about 162 acres for the price of $2,030.25, for which notes were given by the purchaser, who further agreed to put the premises in a suitable condition for raising rice thereon, and to cultivate the land, except 10 acres thereof, in rice, and to deliver one-half of the crops of rice from year to year, until the price of the land and such other sums as might he advanced by said Cox for sink *721 ing a well on the premises should he fully-paid. It was stipulated that the failure of Heald to comply with the requirements of the agreement, or any of them, should work a forfeiture of the contract, and that he should thereupon surrender the premises upon receiving 30 days’ notice to quit, and that Heald should pay all the taxes assessed against said land.
This agreement was executed by Heald’s. taking possession of the premises, building a dwelling house, and making other improvements thereon, and by raising crops, of rice, portions of which were delivered to Cox. In December, 1902, Heald owed Cox a balance of $1,650. On the 22d of said month, Heald borrowed from the plaintiff, who was a money lender, the sum of $3,000, at 8 per cent, interest, and to secure the payments of the same specially mortgaged his tract of land in the usual form, without waiving his homestead.
On December 17, 1902, Cox executed in Iowa a warranty cash deed to Heald, which he sent to his agent in Calcasieu, to be delivered upon the payment of $1,650, the balance due by Heald on the purchase price, pursuant to the agreement of December 12, 1809. Heald paid this amount on December 22, 1902, out of the sum of $3,000, borrowed from the plaintiff on that date.
The first question in the case is that of the homestead rights of Heald as against the plaintiff. Heald had a wife and children dependent on him for support, and was therefore entitled to a homestead. He moved on the land in December, 1899, built his dwelling thereon, and occupied the premises as owner, until the property was sold at sheriff’s sale in March, 1909.
The agreement of sale, executed on December 12, 1899, transferred the title to Heald, subject to the condition of the payment of the price as stipulated in the contract. The warranty cash deed of December 17, 1902, was a confirmation of the title previously conveyed. ■ Hence, when Heald executed a special mortgage in favor of the plaintiff on December 22, 1902, he had a title to the-property, and his homestead rights thereon had accrued.
As shown by the records, the warranty cash deed antedated the mortgage in favor of the plaintiff, and was filed for registry before the mortgage was recorded. Hence,, as to third persons, the mortgage was executed after the legal title had passed to the defendant. The contention that both were of the same date rests on facts in paiswhich cannot affect the rights of the milling company.
[1] On this state of facts, it is well settled that the plaintiff acquired no right or mortgage against the homestead, except on the surplus of the price above the sum of $2,000. See Glenn v. Bresnan, 123 La. 1014, 49 South. 690; Lear v. Heffner, 28 La. Ann. 829.
In Glenn v. Bresnan, it was also held that a mortgage executed by the husband and wife, with a waiver of their homestead rights in accordance with the statute, primes-prior mortgages executed by the husband alone. We see no good reasons for reversing the doctrine so enunciated in that ease.
[4] The contention of the plaintiff that there was some kind of fraud or deception practiced on him by the defendant and intervener concealing their intention to claim the homestead until after the sheriff’s sale had been made, thereby inducing the plaintiff not to bid over the sum of $4,200, the price at which the property was adjudicated, is without any legal foundation. In. Johnson v. Agurs, 116 La. 634, 40 South. 923, 114 Am. St. Rep. 562, this court held that the debtor can claim the $2,00,0 reserved to him, in ease of a judicial salé of the homestead, as long as the proceeds remain in the hands of the sheriff or of the pur *723 chaser. The' exercise of a legal right cannot work a legal injury.
[3] Plaintiff paid, the taxes on the land to the amount of $127, and by so doing was subrogated to the privilege of the taxing authorities by operation of law. Dickson v. Hynes et al., 36 La. Ann. 684; C. C. 2161. The taxes primed the homestead, and the judge a quo properly charged such claim with its proportion of the taxes. Section 89 of Act No. 170 of 1898 provides for the conventional subrogation of any person who may pay the taxes of another, and is not inconsistent with the legal subrogation, which takes place for the benefit of a creditor who pays another, whose claim is preferable to his by reason of privilege or mortgage. C. C. 2161.
Appellee’s contention that the mortgage claim of the plaintiff should be credited with the further sum of $286.17 was rejected by the judge a quo, and on the conflicting evidence in the record we cannot say that the ruling was clearly erroneous.
The movables of the premises were not seized under the executory process sued out by the plaintiff, and a few days after the seizure of the land, with the buildings and improvements thereon, the defendant transferred all of said movables to the United Irrigation & Rice Milling Company, the holder of the second mortgage. [2] The judgment below deducts from the homestead claim certain of these movables to the amount of $445, on the theory that the same constituted a part of the homestead exemption of $2,000 in amount, and should be credited on the homestead claim. Article 244 of the Constitution of 1898 exempts, as a homestead, the land, not exceeding 160 acres, and also “two .work horses, one wagon or cart, one yoke of oxen, two cows and calves * * * and the necessary farming implements, to the value of two thousand dollars.” The defendant and his assigns having received $445 in exempt movables, said amount was properly deducted from the total homestead claim of $2,000. The other movables on and off the premises were not exempt as a part of the homestead, and we see no good reason in law or in equity for crediting their value on the homestead claim. Those off the premises were not subject to plaintiff’s mortgage, but were covered by the mortgage of the milling company. Those on the premises, which were immovable by destination, were covered by both mortgages, and the value of the same should be credited on the second mortgage; but that would be a vain and useless imputation, since the proceeds of the sale, less costs, taxes, and the homestead exemption, will not suffice to pay plaintiff’s first mortgage.
It is therefore ordered that the judgment below be affirmed, and that the plaintiff pay the costs of appeal.
SOMMERVILLE, J., takes no part herein.
See dissenting opinion of PROVOSTY, J., 55 South. 30.